UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

LYNDA DENNIS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 4:25-CV-22 JD

## <u>OPINION AND ORDER</u>

Plaintiff Lynda Dennis protectively applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning in October 2021. Her claim was rejected, leading to a review by an Administrative Law Judge ("ALJ") who concluded that Plaintiff was not disabled. The Appeals Council denied her request for review, and Plaintiff now seeks judicial review. For the reasons below, the Court will affirm the Commissioner's decision.

### A.  Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## B.  Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1.  Whether the claimant is currently engaged in substantial gainful activity;

2.  Whether the claimant has a medically severe impairment;

3.  Whether the claimant's impairment meets or equals one listed in the regulations;

4.  Whether the claimant can still perform past relevant work; and

5.  Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### C. The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "dextroscoliosis, spinal stenosis worse at L3-4 bilaterally and at L4-5, foraminal stenosis left greater than right at L2-3, obesity, right knee arthritis, and Baker's cyst right knee." (ALJ's Decision, R. at 13.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*, R. at 14.)

In the decision, the ALJ recounted Plaintiff's testimony at the November 2023 hearing. Plaintiff testified that her spinal condition prevents her from prolonged sitting or standing, which precludes her from working. She said that she can stand for only 15–20 minutes, walk from the handicapped spot to the store, and sit for 15–20 minutes. She has to continuously alternate between sitting and standing to avoid muscle spasms in her spine so severe that they take her breath away. She takes prescription strength Ibuprofen and Tylenol; she takes no opioids because of the history of opioid addiction in her family. And while she tried Cymbalta, she is not taking it any longer due to severe side effects. Plaintiff also tried epidural injections, but they did not help. At the time of the hearing, she was trying to use homeopathic remedies. (*Id.*, R. at 15–16.)

The ALJ noted Plaintiff's subjective complaints to her health care providers. Her doctor recommended L3 and L4 transforaminal epidural injections, but she was afraid to undergo the procedure, due to concerns that the procedure would be ineffective and would cause side effects, as was her mother's experience under similar circumstances. Plaintiff told the doctor that she was going to wait it out at home using a hot tub to see if that would alleviate her pain. According to Plaintiff, physical therapy exercises helped the symptoms so long as she was not dealing with

4

a flare up. She had some relief when undergoing chiropractic care, but the pain returned. At one of the medical visits, Plaintiff had reported that pain increased after weekend activities. The ALJ observed that Plaintiff told a health care provider that she traveled to California and that the plane ride increased the pain. (*Id.*, R. at 18.)

In determining Plaintiff's residual functional capacity ("RFC"),[1] the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical and other evidence in the record." (*Id.*, R. at 16; *see also id.*, R. at 18.) The ALJ concluded that Plaintiff has the RFC to perform

> sedentary work[2] . . . except the claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps, stairs, stoop, kneel, crouch or crawl, and occasionally balance as defined by the SCO. The claimant can occasionally lift the bilateral shoulders above shoulder height. She can have no exposure to environmental hazards such as high exposed places and moving mechanical parts. She requires the option to stand for 5 minutes after sitting for 30 minutes but can remain on task when doing so.

(*Id.*, R. at 15.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that a person with Plaintiff's RFC "would be able to perform her past relevant work as an education advisor as performed per the [Dictionary of Occupational Titles]." (*Id.*, R. at 20.) The ALJ accepted the VE's testimony, including that Plaintiff "should be able to

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

adjust her standing and sitting as needed in this job (*id.*), and found that Plaintiff was not disabled.

**D. Discussion**

In her appeal, Plaintiff argues that the ALJ erroneously failed to perform a function-by-function RFC analysis in a narrative fashion as required by SSR 96-8p. She contends that the ALJ failed to explain how, based on the record, she could sustain sedentary work given that she can sit for only 15–20 minutes before needing to stand. Plaintiff also argues that her physical therapist provided a medical opinion consistent with Plaintiff's testimony that she cannot walk or sit for long periods, which the ALJ ignored. Finally, Plaintiff submits that the ALJ accepted her testimony about her inability to stay on task continuously, but still found her capable of performing past relevant work.

In response, the Commissioner argues that the ALJ's RFC assessment for the sit/stand option is supported by the evidence in the record, such as reports from doctor visits and Plaintiff's medical treatment history. The Commissioner also submits that the physical therapist did not provide a medical opinion, but merely recited what Plaintiff told him about her ability to sit and stand. Finally, the Commissioner points out that, although at first blush it appears that the ALJ accepted Plaintiff's allegations about her inability to stay on task, in reality this was a harmless typographic error.

Plaintiff did not file a reply brief.

The Court will consider Plaintiff's last argument first. After all, if it is true that the ALJ accepted Plaintiff's testimony about her inability to stay on task and regularly attend work and yet found her capable of past relevant work, the error would be obvious and remand inevitable. It

6

turns out, however, that Plaintiff's argument is based on what is a clear typographic error, not the ALJ's actual finding.

In the last section of her decision, the ALJ discussed whether the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (ALJ's Decision, R. at 20.) Although addressing the VE's testimony, the ALJ inadvertently referred to "the claimant" in the second-to-last sentence:

> . . . In accordance with SSR 00-4p, the undersigned has carefully considered the testimony of the vocational expert and finds that there is no evidence to show that it is in conflict with the information contained in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (SCO). The DOT does not address a sit/stand option, which was based on the vocational expert's opinion. The vocational expert testified that the claimant should be able to adjust her standing and sitting as needed in this job. The vocational expert testified there is nothing in the DOT that discusses the sit/stand option. *The claimant* testified to off task behavior and absenteeism as well, which was based on the claimant's education, experience, and knowledge. The undersigned accepts the vocational expert's testimony in these matters.

(*Id*. (emphasis added).) When the paragraph is read as a whole, the typographic error is evident. As a result, Plaintiff's argument for reversing the ALJ's decision on the ground that this sentence pertains to her testimony is without merit. *See Koslow ex rel. Koslow v. Astrue*, No. 2:08CV159-PRC, 2009 WL 1457003, at *22 (N.D. Ind. May 22, 2009) ("Reading the ALJ's entire decision as a whole, the Court agrees with the Commissioner's assertion that the formal finding contains a typographical error and that the error is harmless.") (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (noting that the court gives an ALJ's "opinion a commonsensical reading rather than nitpicking at it").

Plaintiff's second argument is also unavailing. On January 30, 2022, Plaintiff's physical therapist, Keith Ellis, summarized therapy progress:

> Assessment/Diagnosis: Patient was showing some progress with skilled physical therapy with decreased symptoms after session. She reports she had covid and was

> significantly sick which set her back. patient reports continues [sic] with difficulties walking and sitting for long periods. Patient with difficulties with bed mobility today. Patient would continue to benefit from skilled physical therapy to address remaining deficits and maximize functional tolerance.

(R. at 409.) Focusing on this summary, Plaintiff contends that the ALJ failed to consider Mr. Ellis's medical opinion that she "continued with 'difficulties walking and sitting for long periods.'" (Pl.'s Br., DE 5 at 4–5 (quoting R. at 408–409).) Plaintiff's argument is cursory and undeveloped and is therefore waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). But regardless of the waiver, any error by the ALJ in failing to explicitly consider Mr. Ellis statement that Plaintiff has "difficulties with walking sitting for long periods" is harmless because the statement is Plaintiff's own subjective report to Mr. Ellis about her ability to sit and walk: "She reports she had covid and was significantly sick which set her back. Patient reports continues [sic] with difficulties walking and sitting for long periods." This statement is encompassed in Plaintiff's hearing testimony, which the ALJ considered at length and ultimately found inconsistent with substantial evidence in the record. What's more, the ALJ considered other physical therapy progress reports, recognizing that Plaintiff expressed difficulties with sitting and standing. For example, the ALJ observed that Plaintiff's flight to California increased her pain and that physical therapy helped, except if she was experiencing a flare up. (ALJ's Decision, R. at 16.) In short, to the extent that Mr. Ellis's restatement of Plaintiff's subjective report qualifies as a medical opinion, it does not present a basis for remand.

Next, the Court considers Plaintiff's primary argument, that the ALJ failed to perform a function-by-function RFC analysis in a narrative form as required by SSR 96-8p.

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based on medical evidence as well as other evidence,

such as claimant's testimony. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all the relevant evidence in the record, even as to limitations that are not severe. *Id.*; *see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms, including pain, and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

It must be underscored, however, that "a claimant bears the burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025). "Establishing the existence of an impairment is not enough. The claimant must present evidence of limitations affecting their capacity to work." *Id.* at 1081; *see Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022) (noting that the plaintiff bore the burden "to come forward with medical evidence to establish that her tachycardia would impede her ability to do sedentary work or that it required any limitations beyond those set forth by the ALJ in his hypothetical question.").

In reviewing a disability benefits appeal, the courts must affirm "so long as the ALJ's decision finds support in 'substantial evidence.'" *Id.* That's a highly deferential standard: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019). "Put most simply, we will reverse an ALJ's decision only if the record 'compels a

contrary result.'" *Thorlton*, 127 F.4th at 1081 (quoting *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)).

The Court finds that the ALJ appropriately assessed Plaintiff's RFC after considering her testimony and her subjective reports to the medical care providers, objective evidence, treatment history, medication use, and the findings of the state agency medical consultants. This evidence is such that a reasonable mind may accept it as adequate to support the ALJ's conclusions. *See Craft*, 539 F.3d at 673. Accordingly, the Court agrees with the Commissioner that the ALJ based his assessment on substantial evidence.

Beginning with Plaintiff's testimony and her subjective reports to her medical providers, the ALJ noted that Plaintiff claims that she cannot work because her spinal condition prevents her from sitting for longer than 15–20 minutes after which she needs to stand for a similar duration. The ALJ observed her allegations that prolonged sitting causes muscle spasms that take her breath away. In addition, the ALJ acknowledged that Plaintiff underwent epidural injections, but they did not help, and she suffered severe side effects from Cymbalta. The ALJ explained that Plaintiff is concerned about opioid medications and is reluctant to have surgery because her mother, who suffers from a similar condition, had several surgeries without getting any relief. As a result, Plaintiff has pursued homeopathic remedies.

The ALJ considered this evidence, finding that Plaintiff does suffer functional limitations due to her impairments, although her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ALJ's Decision, R. at 16.) In reaching this conclusion, the ALJ considered MRIs of Plaintiffs cervical, thoracic, and lumbar spine, recognizing that she suffered various levels of degenerative disc disease and neural foraminal narrowing. (*Id*., R. at 17.) The

ALJ also discussed Plaintiff's medications, including their side effects. (*Id.*) The ALJ noted that Plaintiff underwent two medial branch blocks, but still reported back pain (*id.*, R. at 16–17) and was concerned about undergoing epidural injections (*id.*, R. at 17). The ALJ considered that Plaintiff participated in physical therapy, but later stopped attending. (*Id.*, R. at 16.) And the ALJ recounted Plaintiff's multiple treatment records, discussing both positive and negative examination findings, such as normal neurologic examination, gait, station, strength, and straight leg raise on the one hand, and decreased sensation down the right leg with numbness and tingling on the other. The ALJ explained that, insofar as Plaintiff has difficulty with prolonged sitting and needs to alternate between her position, she provided in the RFC "the option to stand for 5 minutes after sitting for 30 minutes to help relieve pain but remaining on task when doing so." (*Id.*, R. at 18.) It cannot be said that the record compels greater functional limitations than what the ALJ assessed.

The ALJ also considered the state agency medical consultants' findings that Plaintiff could "perform work at the light level of exertion except that she could occasionally climb ladders, ropes, or scaffolds, with the unlimited ability to perform the remaining postural maneuvers." (ALJ's Decision, R. at 19.) The ALJ found their opinions unpersuasive "as the expanded record, including the claimant's testimony, supports greater limitations." (*Id.*) Instead, the ALJ noted that "the record shows the claimant had some reduced range of motion of the cervical and lumbar spine, normal strength, some diminished sensation in the lower extremities, negative straight leg raise, and a normal gait," which she accounted for "with the limitation to work at the sedentary level of exertion" that includes the sit/stand option. (*Id.*) As the Seventh Circuit has recognized, the ALJ's finding that is more limiting than those of any state agency doctor illustrates "reasoned consideration" of Plaintiff's evidence. *See Burmester v. Berryhill*,

11

920 F.3d 507, 510 (7th Cir. 2019). This contradicts Plaintiff's contention that the ALJ failed to analyze the evidence in the record.

Lastly, Plaintiff insists that the ALJ erred by failing to explain how the assessment of sedentary work, with a restriction of standing for 5 minutes after sitting for 30 minutes, is reconciled with her testimony that she can only sit for 15 to 20 minutes. The Court disagrees. The ALJ specifically stated that she imposed the sit/stand limitation based on Plaintiff's testimony at the hearing that she needed to alternate between sitting and standing. (ALJ's Decision, R. at 19.) Although Plaintiff testified that she could only sit for 15 to 20 minutes before needing to stand and that she could not return to sitting even after standing, the ALJ did not accept this testimony in its entirety, finding that a less restricted limitation was appropriate. Ultimately, it is Plaintiff's burden to prove that her medically determinable impairments cause limitations that render her disabled, yet the evidence here is not so one-sided that no reasonable mind could accept it as adequate to support the ALJ's conclusion.

### E.  Conclusion

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.


SO ORDERED.

ENTERED: May 4, 2026


_____/s/ JON E. DEGUILIO_____
Judge
United States District Court